**Deborah MILLER and Sean Owens, Plaintiffs,**

v.

**DISTRICT OF COLUMBIA, Defendant.**

**No. CIV. A. 96–02833.**

United States District Court,
District of Columbia.

Nov. 5, 1997.

Charles Robert Both, Yablonski, Both & Edelman, Washington, DC, Joseph Marc

Sellers, Washington Lawyers' Committee for Civil Rights, Washington, DC, for Plaintiffs.

Kenneth Anthony Vance, Arabella W. Teal, Office of Corp. Counsel, Washington, DC, for Defendant.

Jeanine Marie Worden, Robert J. Mather, U.S. Dept. of Justice, Civ. Rights Div., Washington, DC, for Intervenor–Plaintiff U.S.

### MEMORANDUM OPINION AND ORDER

SPORKIN, District Judge.

This matter comes before the Court on Plaintiffs' Motion for Partial Summary Judgment on the Issue of Liability. Initially brought by two hearing impaired residents of the District of Columbia and joined by the United States, Plaintiffs in this case seek declaratory and injunctive relief to remedy alleged violations of the American with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act. For more than a year, the District of Columbia's emergency 9–1–1 system has been virtually inaccessible to deaf individuals requiring emergency services. The experiences of the Plaintiffs during the summer of 1996, as well as the uncontested documentation by the United States over the past three months as ordered by this Court, demonstrate that the District of Columbia's 9–1–1 system fails to provide services to callers using telecommunication devices ("TDD") for the deaf. to respond to TDD callers, Plaintiffs are entitled as a matter of law to summary judgment on the issue of liability. Fed.R.Civ.P. 56(c). Thereby, Plaintiffs' Motion for Partial Summary Judgment will be granted. It is hereby

ORDERED that Plaintiffs' Motion for Partial Summary Judgment is GRANTED; it is further

ORDERED that the United States' Motion for Partial Summary Judgment is GRANTED; and it is further

DECLARED that the Government of the District of Columbia and its Metropolitan Police Department violated title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131–12134; and Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794; and it is further

ORDERED that:

## I. *Technology*

### 1. *Police Department.*

A. In order to provide individuals who use TDD's with direct, effective access to the Police Department's 9–1–1 emergency telephone system, the District shall maintain its integrated TDD 9–1–1 system in working condition that is sufficient to permit all of the Police Department's call-takers to regularly and routinely answer TDD 9–1–1 calls at each call-taking position.

B. The District shall maintain additional TDD 9–1–1 equipment to ensure that backup equipment will be provided in case of an emergency or integrated TDD 9–1–1 system malfunction. The District shall include TDD 9–1–1 equipment in power failure contingency plans.

C. The District shall, no later than January 1, 1998, discontinue using the stand-alone TDD equipment except in the case of further equipment, software, or computer failure, which causes the integrated TDD 9–1–1 system to be inoperable. Thereafter, the District shall use the integrated TDD 9–1–1 system as the primary and back-up means of TDD 9–1–1 access.

### 2. *Fire/Emergency Medical Services Department.*

A. In order to provide individuals who use TDD's with direct, effective access to the Fire and Emergency Medical Services ("Fire/EMS") Department's 9–1–1 emergency telephone system, the District shall, within two (2) weeks of the date of this Order, purchase and install stand-alone TDD's at each call-taker position in the Fire/EMS Department's 9–1–1 emergency telephone system.

B. The District shall test the effectiveness of the stand-alone TDD's and each of its call-takers' proficiency in using the stand-alone TDD's at least once every week for two months and shall take immediate action to remedy any deficiencies in equipment or call-taker performance discovered through this testing process.

C. The District shall immediately purchase two (2) additional stand-alone TDD's, which shall be in place within four (4) weeks and thereafter maintained as backup equipment in case of an emergency or TDD malfunction. The Fire/EMS Department shall include TDD 9–1–1 equipment in power failure contingency plans.

D. The District shall, no later than August 1, 1998, redesign the Fire/EMS Department's existing CAD interface to provide connection between the CAD system and an integrated TDD 9–1–1 system. As soon as the District has determined that the CAD interface has been successfully redesigned and tested, the District shall, with the United States' concurrence, resume using the integrated TDD 9–1–1 system. Following the implementation of the redesigned CAD system, the District shall maintain stand-alone TDD's as back-up equipment in case of an emergency or TDD malfunction.

E. The District shall, no later than January 1, 1999, discontinue using the stand-alone TDD equipment at the Fire/EMS Department, except in the case of further equipment, software, or computer failure, which causes the integrated TDD 9–1–1 system to be inoperable. Thereafter, the District shall use the integrated TDD 9–1–1 system as the primary and back-up means of TDD 9–1–1 access.

## II. *Standard Operating Procedures*

The District shall, within thirty (30) days of the date of this Order, issue a Departmental order(s) outlining procedures for handling TDD 9–1–1 calls at the Police and Fire/Emergency Medical Services Departments. Such Departmental Order(s) shall be enforceable by the District to the same extent Standard Operating Procedures would be.

### III. *Preprogramed Messages*

The District shall, within thirty (30) days of the date of this Order, configure the Police Department's integrated TDD 9–1–1 system with default preprogramed messages consistent with the National Emergency Number Association Generic Standards for E9–1–1 PSAP Equipment, NENA–04–001.

### IV. *Training*

1. *Police Department.* In order to ensure the proper operation of TDD's and related equipment, as well as the effective processing of TDD calls by 9–1–1 call-takers, the District shall provide mandatory TDD 9–1–1 comprehensive training for all newly hired call-takers and all persons who assume any 9–1–1 call-taking duties.

2. *Fire/EMS Department.*

A. As soon as the District installs stand-alone TDD's at the Fire/EMS Department, the District shall instruct call-takers on how to use stand-alone TDDs in responding to incoming TDD calls, and to test periodically the effectiveness of the interim measures and to correct deficiencies.

B. In order to ensure the proper operation of TDD's and related equipment, as well as the effective processing of TDD calls by 9–1–1 call-takers, the District shall provide mandatory TDD 9–1–1 comprehensive training for all newly hired call-takers and all persons who assume any 9–1–1 call-taking duties.

3. *Comprehensive Training.* The comprehensive training shall include—

A. General information about title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act;

B. General information about communication issues regarding individuals who are deaf or hard of hearing, or who have speech impairments, including information about American Sign Language;

C. Practical instruction on identifying and processing of TDD calls, including the importance of using proper syntax and protocol when responding to TDD calls and relayed calls; and

D. Practical instruction to assist the call-taker in informing dispatchers, and ultimately the response team, that the emergency caller is deaf or has a speech impairment.

4. *New Call-takers.* In addition to the above, all new employees shall receive hands-on training on TDD communications as part of their initial training orientation. The comprehensive and hands-on training for 9–1–1 call-takers shall take place before a call-taker handles calls independently.

5. *Refresher Training.* The District shall also from the date of this Order provide refresher training for each call-taker every six (6) months or more frequently if test results fall below performance standards as set forth in Paragraph XX below from the date of this Order to maintain each call-taker's skill levels.

### V. *Competency Tests*

To insure the effectiveness of its training, the District shall—

1. Utilize the Telecommunications for the Deaf, Inc.'s *Emergency Access Self–Evaluation* program or its equivalent to establish criteria and test each trainee's competency at the conclusion of the training;

2. Develop and implement a supplemental training plan for any 9–1–1 call-taker who does not demonstrate competency after prescribed training;

3. Provide a refresher training course for each call-taker every six (6) months from the date of this Order in order to maintain call-takers' skill levels;

4. Re-evaluate any 9–1–1 call-taker's skill after any incident involving unsatisfactory processing of a TDD call (whether test call or actual call), and take appropriate disciplinary action in conformance with applicable personnel regulations;

5. Document all training provided, including each 9–1–1 call taker's employee number, title and the date of training; and

6. Provide copies of the documentation to the United States and Plaintiffs upon request.

## VI. *Public Education*

Within sixty (60) days of the date of this Order, the District shall begin working directly with organizations representing persons who have hearing or speech impairments, to develop and implement a public education program regarding use of 9–1–1 services by individuals who use TDD's.

## VII. *Internal Testing Program*

1. The District shall continue for a period of three (3) years an internal testing program in which it conducts every two weeks random TDD test calls of each call-taking position by transmitting Baudot tones from TDD's and by making "silent" open-line calls. These tests shall be unannounced and shall be documented to include the date and time of each test call, the call-taker identification, the call-taking position, an identification of each test call as transmitting tones or "silent," whether the call received a TDD response and the content of the TDD response, the time elapsed and number of rings from the initiation of the TDD call until the 9–1–1 call-taker responds by TDD, and whether the call was processed according to the District's Departmental order(s). The purpose of the testing program is to test each call-taker and each position. If testing reveals technical deficiencies or inadequacies in the handling of TDD calls, the District shall take prompt remedial action, including, wherever appropriate: additional training, repair or replacement of equipment, additional policy or procedural changes, and employee disciplinary action.

2. To record test calls, the District must use the Observation Checklist form, which is attached to this Settlement and Order as Appendix B.[Appendix not included for publication]

3. Upon request, the District shall provide copies of the recorded forms to the United States and/or Plaintiffs.

4. After eighteen (18) months, the parties shall re-evaluate the appropriateness and necessity for continuing random TDD testing on a biweekly basis.

## VIII. *Gallaudet University Testing Program*

Until such time as the District implements the external testing program as set forth in paragraph IX below, the District shall continue a testing program in cooperation with Gallaudet University. The District shall obtain and evaluate results of Gallaudet University's testing program, (including the same information that would be required for internal test calls) and investigate any unsuccessful calls consistent with the procedures for the District's internal testing program as provided in paragraph VII.

## IX. *External Testing Program*

1. Within one hundred-eighty (180) days after the effective date of this Order, the District shall initiate a process to hire a qualified contractor to conduct, for a period of twenty-four (24) months, an External Testing program of the District's 9–1–1 emergency telephone system's accessibility to persons who use TDD's.

2. The External Testing program shall adhere to the procedures set forth for its Internal Testing program in paragraph VII. In addition to adherence to the protocols established for the Internal Testing program, External Testing shall be conducted from random sites and telephone numbers, to ensure that the calls will not be identifiable as TDD test calls by the call-taker using the Automatic Number Identification (ANI) or Automatic Location Identification (ALI) systems.

3. The External Testing program contractor shall submit written quarterly reports to the District. However, the District shall be notified immediately if the testing reveals that the District is not in compliance with the Performance Standard as set forth in paragraph XI.

4. For purpose of this paragraph, the term "qualified contractor" means a contractor which has: a demonstrated knowledge of TDD protocol and technology and the syntax and grammar of American Sign Language; an understanding of the communication issues presented by persons who have hearing or speech impairments; a proven ability to

meet the performance and reporting requirements of this contract; and the ability to meet the financial stability standards required of all contractors by the District.

## X. *The Department of Justice's Monitoring Efforts.*

The United States shall monitor the District's compliance with this Agreement and Order. As part of its monitoring efforts, the United States may place unannounced TDD test calls to the District's 9–1–1 system and, if it does so, shall immediately report negative results of such test calls to the District.

## XI. *Performance Standard*

The District shall ensure that ninety (90) percent of all TDD 9–1–1 calls (including test calls) are answered by TDD in no more than ten (10) seconds during any biweekly operating period.

## XII. *Noncompliance or Delay in Performance*

1. If the District becomes aware that it will not meet, or is likely not to meet, any completion date for any corrective action required by this Order, or is not in compliance with the Performance Standard as set forth in paragraph XI, the District shall submit written notification to the counsel for Plaintiffs and the Department of Justice by facsimile within seventy-two (72) hours whenever the Commander or Acting Commander becomes aware of such expected delay or noncompliance. The notice shall contain the following information: a description of the noncompliance or the expected delay, an estimate of how much additional time is needed to complete the corrective action or to come into compliance, and a statement describing all steps taken to address the noncompliance or delay.

2. Immediately upon receipt by counsel for Plaintiffs and the Department of Justice of such notification as described above, Plaintiffs and their counsel and the Department of Justice agree to forbear from filing an action against the District to enforce compliance with the terms of this Stipulated Agreement and Order for a period of ten (10) working days. During the 10–day period the parties agree to attempt to amicably resolve the noncompliance or expected delay.

The parties shall have at least one meeting in person to attempt resolution of the issue or dispute.

3. The parties further agree that any modifications to this Order must be pursuant to joint motion filed by all parties and granted by the Court.

## XIII. *Notice*

1. Except as specified otherwise, when written notification to or communication with Plaintiffs, the United States or the District is required by the terms of this Order, it shall be addressed as follows:

*As to Plaintiffs:*

Charles Both, Esq.

Yablonski, Both & Edelman

1140 Connecticut Avenue, N.W.

Washington, D.C. 20036

Fax: 202–463–6688

E. Elaine Gardner, Esq.

Washington Lawyers' Committee for Civil Rights and Urban Affairs

1300 19th Street, N.W.

Suite 500 Washington, D.C. 20036

Fax: 202–835–0309

*As to the United States:*

Robert J. Mather

Jeanine Worden

Disability Rights Section

Civil Rights Division

U.S. Department of Justice

Post Office 66738 Washington, D.C. 20035–6738

Fax: 202–307–0595

*As to the District*

Arabella Teal

Assistant Corporation Counsel

Office of the Corporation Counsel

441 4th Street, N.W.

Suite 6th Floor South # 73

Washington, D.C. 20001

Fax: 202–727–3625

XIV. *Progress Reports*

1. Within ninety (90) days of the date of this Order, the District shall submit its first report to counsel to the United States and counsel to Plaintiffs detailing the actions it has taken to comply with this Order. Within one hundred-eighty (180) days of the date of this Order, the District shall submit its second report to counsel to the United States and counsel to Plaintiffs detailing the actions it has taken to comply with this Order. These reports shall include information on test calls required by paragraphs VII–IX, and the same data on actual TDD calls received. The reports shall also outline complaints received regarding TDD accessibility and the resolution of those complaints.

2. During the three-year period following the effective date of this Order, the District shall summarize and send results from each round of tests required by paragraphs VII–IX to the United States and to Plaintiffs every ninety (90) days after the date of this Order, along with a description of any actions taken to remedy inadequacies uncovered by the tests.

XV. *Final Report*

The District shall provide a final report to the United States and Plaintiffs forty-five (45) days prior to the expiration date of the Order, detailing the actions taken to comply with this Order and describing any actions taken to remedy inadequacies uncovered by tests. Within fifteen (15) days of receipt of the final report, the United States and Plaintiffs shall respond to the Final Report.

XVI. *Records*

1. The District shall maintain all records and data utilized by the District in preparing the data and the reports contained in the progress reports required to be submitted in accordance with paragraph XIV for at least three years from the date of this Order; and 2. The District shall at all times maintain all records and data evidencing compliance with the Order necessary to document implementation and continued compliance.

XVII. *Jurisdiction.*

The Court shall retain, until its expiration date as set forth in paragraph XVIII, jurisdiction over this Consent Order for the purposes of enforcing this Order, resolving any disputes that may arise under this Order and entering such further orders as may be appropriate.

XVIII. *Termination.*

This Order shall terminate three (3) years from the date of its entry. For those obligations which do not span the entire life of this Order, if and when the District believes that it has fulfilled its obligation, it shall so notify Plaintiffs and the United States. Plaintiffs and the United States shall inform the District if they agree the obligation has been fulfilled, and if so, the modification provisions of this Order in paragraph XII (3) shall be exercised; it is further

ORDERED that the trial in this matter will be limited to the issues of compensatory damages in an amount to be determined at trial by jury, the date of which shall be set by this Court; and it is further

ORDERED that the District shall compensate counsel for Plaintiffs Owens and Miller for attorneys fees and expenses incurred with respect to this matter, in an amount to be determined by this Court upon application by counsel for Plaintiffs.